# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Jonathan Cole, Katie Sullivan, and<br>Nathaniel Faflick, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| | ) |
| vs. | ) |
| | )          Case No. |
| | ) |
| | ) |
| Duane Goossen, in his official capacity | ) |
| as Secretary of Administration; Tom | ) |
| Day in his official capacity as | ) |
| Legislative Administrative Services | ) |
| Director; and | ) |
| Herman Jones, Superintendent | ) |
| of Kansas Highway Patrol, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Jonathan Cole, Katie Sullivan, and Nathaniel Faflick, by and through their attorneys, bring this action against Defendants Duane Goossen in his official capacity as the Kansas Secretary of Administration, Tom Day in his official capacity as the Legislative Administrative Services Director, and Herman Jones in his official capacity as Superintendent of the Kansas Highway Police, and allege as follows:

## INTRODUCTION

1.      This case is about Kansas's scheme of rules and practices that collectively suppress virtually every method of speech and expression at the Kansas Statehouse building. Official

rules and regulations adopted by the Department of Administration and enforced by the Kansas Capitol Police impose prior restraints on assembly and speech by limiting the right to protest to people who have the support of an elected official, pass the Secretary of Administration's standardless approval test, and wish to speak about an issue or event that is not spontaneous. The scheme contains no exceptions for small groups and requires payment of a $20 nonrefundable fee whether or not a permit application is approved. These rules also prohibit the silent display of signs and empower Capitol Police officers to ban individual protesters at their discretion for indefinite periods of time.

2.      This case is also about the Department of Administration and Capitol Police practice of retaliating against individuals for exercising their First Amendment rights. Most recently, Defendants retaliated against Mr. Cole, Ms. Sullivan, and Mr. Faflick because they participated in a nondisruptive protest where they unfurled banners calling for a vote on Medicaid. The Capitol Police detained Plaintiffs beyond what was necessary to identify them, releasing them only when a concerned bypasser intervened on their behalf.  Additionally, the Capitol Police banned Plaintiffs from the Statehouse premises for an entire year.  While the ban was eventually lifted, the chill from being improperly targeted and excessively penalized has made Plaintiffs reticent to return to the Statehouse to participate in protected First Amendment activity.

3.      In the coming months, lawmakers are expected to convene at the Statehouse to vote on legislation that would fundamentally transform the lives of thousands of Kansans—including budget legislation, Medicaid expansion, and fetal personhood. After the session is over, elected officials will continue to meet at the Statehouse for taskforce and committee meetings on equally pressing issues.  Plaintiffs seek to engage in individual and three-person demonstrations at the Statehouse without prior approval, to silently display signs

expressing opposition or support for pending legislation, and to ensure that neither they nor anyone else is impermissibly or arbitrarily issued a categorical Statehouse premises ban.

4.      By requiring Plaintiffs to obtain a permit for meetings and demonstrations involving only three people inside the Statehouse and anywhere on the grounds, Defendants impose an unnecessary and impermissible prior restraint on political expression at the core of First Amendment protection. Moreover, Defendants' blanket prohibition on signs is not narrowly tailored to serve any significant government interest. Additionally, Defendants' standardless policy permitting Capitol Police to impose indefinite premises bans on members of the public for Statehouse policy violations, regardless of the severity of the violation, is vague, overbroad, and unconstitutionally suppresses core petitioning activities without due process of law. Defendants' retaliatory treatment of Plaintiffs is also a patently unconstitutional action.

5.      Accordingly, Defendants' policies and actions should be enjoined and they should be held liable, in their official capacities, for violating Plaintiffs' constitutional rights.

## JURISDICTION AND VENUE

6.      This civil rights action arises under 42 U.S.C. § 1983 and seeks vindication of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.  This Court has jurisdiction to provide monetary and injunctive relief, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

7.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8.      Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims occurred in the District of Kansas. Defendants Duane Goossen, Tom Day, and Herman Jones are also all located within this District.

## PARTIES

9.      Plaintiff Jonathan T. Cole is a Senior at Kansas State University majoring in Mechanical Engineering. He is a resident of Kansas who is passionate about health equity, LGBTQIA rights, and the impacts of fiscal policies on indigent Kansans.  He wishes to exercise his First Amendment rights to free expression, assembly, and to petition his government at the Statehouse. However, Defendants' permit and sign rules prevent Mr. Cole from doing so without risking being banned from the building. Additionally, Defendants' unnecessary detention of and excessive penalty against Mr. Cole for exercising his First Amendment rights on March 27th, 2019 has had a chilling effect on his political advocacy at the Statehouse.

10.      Plaintiff Katie Sullivan is a Senior at Kansas State University where she is majoring in Social Sciences. She is a resident of Kansas and a committed advocate for reproductive rights, voting rights, and criminal justice reform. Ms. Sullivan would like to meet with legislators as well as other activists at the Statehouse without first obtaining a permit. Additionally, she would like to display handheld signs and engage in non-disruptive demonstrations in the Statehouse without prior approval.   However, Defendants' permit and sign rules prevent her from doing so without risking being banned from the building. Additionally, Defendants' unnecessary detention of and excessive penalty against Ms. Sullivan for exercising her First Amendment rights has had a chilling effect on her political advocacy at the Statehouse.

11.      Plaintiff Nathaniel Faflick is a Senior at Kansas State University majoring in Social Work. He is a resident of Kansas who wishes to engage in First Amendment activity in the Statehouse but is restricted from doing so by Defendants' sign and permit policies. Additionally, Defendants' unnecessary detention of and excessive penalty against Mr. Faflick for exercising his First Amendment rights has had a chilling effect on his political advocacy at the Statehouse.

12.     Defendant Duane Goossen currently serves as the Secretary of Administration. Defendant Goossen is the chief officer in the Department of Administration and is responsible for adopting the rules and regulations related to the use of state buildings, including the Statehouse. He also has final authority to determine whether to grant an application for a permit to use government property.

13.     Defendant Tom Day serves as the Director of Legislative Administrative Services. Defendant Day controls use of the Legislative Chambers, the 3rd, 4th, and 5th floors of the Statehouse building, Legislative Committee Rooms, and other space that is managed by the Legislature. He also reviews applications for permits to use these spaces. Mr. Day also assists in enforcing the Department of Administration's building use rules in the areas of the Statehouse under his jurisdiction.

14.     Defendant Herman Jones currently serves as the superintendent of the Kansas Highway Patrol.  He is the top officer in charge of the Kansas Capitol Police, an entity within the Kansas Highway Patrol responsible for enforcing regulations and rules relating to use of the Statehouse. In particular, the Capitol Police are responsible for physically removing and banning persons from the Capitol Complex.

## FACTUAL ALLEGATIONS

### *The Kansas Statehouse*

15.     The Kansas Statehouse has been the seat of the state's executive and legislative branches of government since 1903. The building and its grounds occupy a full city block at SW 8th & SW Van Buren streets in Topeka, Kansas.  The building houses historic murals, a gift shop, the state library, and the offices of 165 legislators representing residents of Kansas.  The Statehouse is the location where the House of Representatives and Senate convene to pass legislation, legislative committees hold public hearings, and elected officials meet with their constituents.

The building is open to the public from 8am to 5pm, six days per week, "attracts 100,000 visitors annually," and members of the public host hundreds of events in the house each year.[1] House Speaker Ron Ryckman aptly captured the essence of the Statehouse in June 2018 explaining "It's obviously the people's house."[2]

16.     The grounds of the Statehouse have been the site of political activism on some of the most pressing issues facing our state including dueling rallies for and against gun control,[3] demonstrations in support of LGBTQ protections,[4] and protests against abortion.[5] By design, the grounds are a large and open space[6] ideal for free expression and accommodating large gatherings. The walkways throughout and around the perimeter of the grounds are similar to the sidewalks throughout the city.[7]

17.     Members of the public have also used the interior of the building for meetings and rallies, including the Kansas People's Agenda who used space in the rotunda for speeches during their 2019 Lobby Day.[8]  Members of the public can reserve five separate spaces inside the Capitol building to engage in expressive activities.[9]

---

[1] *Policy for Usage of the Statehouse and Capitol Complex*, KANSAS DEPARTMENT OF ADMINISTRATION (2017), Rule 1(b), https://admin.ks.gov/docs/default-source/default-document-library/statehouse-and-capitol-complex-usage-policy7e98def7825e6a5d8792ff000032666d.pdf?sfvrsn=3c6b4c7_0.

[2] *Lawmakers want answers after people locked out of Statehouse*, ASSOCIATED PRESS (June 28, 2018), https://www.usnews.com/news/best-states/kansas/articles/2018-06-28/lawmakers-want-answers-after-people-locked-out-of-statehouse.

[3] Hunter Woodall, *Kobach tells national walkout students at gun-rights rally to stay in class*, KANSAS CITY STAR (Apr. 20, 2018), https://www.kansascity.com/news-politics-government/article209222789.html.

[4] Sherman Smith, *'Don't let hateful words define you': Students rally for equality at Kansas Statehouse*, DODGE CITY DAILY GLOBE (Jan. 30, 2019), https://www.dodgeglobe.com/news/20190130/dont-let-hateful-words-define-you-students-rally-for-equality-at-kansas-statehouse.

[5] Irin Carmon, *Kansas abortion ban challenged in court*, MSNBC (June 1, 2015), http://www.msnbc.com/msnbc/kansas-abortion-law-challenged-court.

[6] Landon Fulmer, *The Kansas* Statehouse, TRADITIONAL BUILDING (Dec. 4, 2015), https://www.traditionalbuilding.com/palladio-awards/statehouse-rules#&gid=ci020114ff801e279b&pid=palladio-1

[7] *Id.*

[8] The People's State of the State, KANSAS PEOPLE'S AGENDA (last visited April 2, 2019), https://kansaspeoplesagenda.org.

[9] Capitol Complex Events Applications, KANSAS DEPARTMENT OF ADMINISRATION  (last visited April 2, 2019), https://admin.ks.gov/offices/ofpm/capitol-complex-events-application.

*Statehouse Rules*

18.     K.S.A §75-4505 authorizes the Secretary of Administration to set rules and regulations for conduct at state-owned property in Shawnee County. The Kansas Secretary of Administration has promulgated regulations that govern use of eleven state government buildings, including the Statehouse, as well as the other buildings in Shawnee County that he operates. The regulations prohibit unnecessary noise, K.A.R. 1-49-4, and damage to the property, 1-49-5. Additionally, the regulations require prior approval to engage in expressive activity, providing "No person shall post any notices or petitions upon any grounds or in any public areas of the buildings listed in K.A.R. 1-49-1. No person shall conduct *any* meeting, demonstration or solicitation on any of the grounds or in any of the buildings listed in K.A.R. 1-49-1 without prior permission of the secretary of administration or secretary's designee" (emphasis added).

19.     The regulations do not include an exemption for demonstrations by a single person or small group.

20.     The regulations also nebulously describe the penalty for violations to any rules, providing: "Any person violating any of these regulations may be ***expelled and ejected from any of the buildings or grounds of the buildings listed in K.A.R. 1-49-1***" (emphasis added). Notably, the regulations do not define the duration for which a person may be expelled from the buildings or grounds of the buildings in the Capitol Complex.

21.     The Policy for Usage of the Statehouse and Capitol Complex, approved by the Secretary of Administration, also contains a number of official rules related to protests and demonstrations at the Statehouse including a comprehensive scheme of permitting requirements and a categorical ban on signs.

22.    The permit rules require applications to: be "submitted to and received no later than ten (10) work days prior to the date of the requested activity," "have a legislative sponsor for activities held inside the Capitol and outside on the grounds," be "relate[d] to a governmental purpose," and include payment for the $20 non-refundable permitting fee.  *See* Rule 2(a)(i); Rule 3(i)(ii); Rule 2(e); Rule 2(c)(ii).

23.    The permit rules also give the Secretary of Administration "final authority over whether an event may be approved, whether the event relates to a governmental purpose, and whether or not any provision of this policy may be waived." Rule 2(e). The policy contains no guidelines governing whether an event should be approved or rejected.

24.    Sign rules provide that: "no person will be allowed to bring personal signage to any building in the Capitol Complex. Security is authorized to confiscate signs," and "no banners, signs, exhibits or any other materials will be taped, tacked, nailed, hung or otherwise placed in any manner within the Capitol Complex. Banners and signage, as part of the event, may be attached to easels, tables and/or panels." Rule 3(h)(xxii); Rule 3(h)(xix).

25.    Other rules contained in the policy for usage include the requirement that events not result in damage to or destruction of state property, and not impede the performance of state business. *See* Rule 3(h)(xv); Rule 3(h)(xiv).

26.    Neither the Department of Administration's regulations nor its Statehouse use policy contain an exception for individuals or small groups.  To the contrary, the regulations specify that ***any*** meeting or demonstration is subject to prior approval. Further, neither the regulations nor policy use rules contain an exception for spontaneous assembly in response to unexpected events or legislative developments. Also absent from the rules and regulations is a time limit on the Secretary of Administration's timeframe in which to approve an application.

***Kansas Poor People's Campaign***

27.     On June 18, 2018, a group of Kansas residents participating in the Kansas Poor People's Campaign attempted to enter the Statehouse.  In response the Kansas Capitol police locked the doors and told the group that they would be arrested if they remained on the plaza outside of the visitor's entrance.[10] When asked why the group was being threatened with arrest, a Capitol Police officer stated that they were engaged in an unlawful assembly.[11] One member of the group asked if he could enter the building for a scheduled meeting with his legislator but was still turned away. The same day Senator Anthony Hensely encountered a citizen who was possibly not participating in the Poor People's Campaign action that had been locked out of the Statehouse.[12]  Capitol Police also excluded a couple of individuals from entering the building until they could ensure that the visitors were not associated with the Poor People's Campaign.[13] The Capitol Police justified banning the group from exercising their First Amendment rights based on their general concern that "situations get out of hand and can turn violent in an instant."[14]

28.     In response to the lockout, members of the Legislative Coordinating Council expressed concerns that the Kansas Capitol Police's decision to exclude members of the public from the Statehouse violated the First Amendment and requested that Legislative Administrative Services Director Tom Day draft a report regarding the Capitol Police's conduct.[15] Day reported that the police had authority to ban or exclude individuals from the Statehouse and that there were no

---

[10] Video from the Poor People's Campaign protest at the Kansas Capitol (June 18, 2018), at 3:25-3:45, *available at* https://www.youtube.com/watch?v=Irvq4tiDjPk.
[11] *Id.* at 11:25-11:50.
[12] *Lawmakers want answers after people locked out of Statehouse*, ASSOCIATED PRESS (June 28, 2018), https://www.usnews.com/news/best-states/kansas/articles/2018-06-28/lawmakers-want-answers-after-people-locked-out-of-statehouse.
[13] REPORT TO LEGISLATIVE COORDINATING COUNCIL (Nov. 9, 2018).
[14] *Id.*
[15] *See supra* note 12

policies guiding officers' decisions to exclude or expel individuals from the Statehouse. He also asserted that he opposed any guidance that would limit their discretion.

***The March 27, 2019 Protest***

29.     On March 27, 2019, Plaintiffs and two other activists staged a silent protest in the Statehouse rotunda to call for a vote on HB 2066, a bill that would expand Medicaid coverage for uninsured Kansans. The activists unfurled four 24 x 10 banners that read "Blood on Their Hands #Expand Medicaid," with each banner naming a different House or Senate leader. The banners were removed approximately four minutes after they were posted. When Administrative Services Director Tom Day removed one of the banners, he told Mr. Cole "I am not telling you to leave but don't put the banner down."[16]

30.     Approximately twenty minutes after Day removed the banners, Plaintiffs were stopped by Kansas Capitol Police officer Scott Whitsell, who looked into Ms. Sullivan's bag without her permission before identifying Plaintiffs as the individuals responsible for hanging the banners. Whitsell told the Plaintiffs that he was imposing a ban prohibiting them from entering the Statehouse. When Plaintiffs asked how long they would be banned from the building, Whitsell paused for a moment before telling them the ban would be in place for a year.  Whitsell then began to escort Plaintiffs out of the building.  As Plaintiffs were about the exit the building through the visitor's entrance, Whitsell detained them seemingly at the direction of dispatch. After being held for nearly ten minutes, concerned citizen Davis Hammet approached Plaintiffs to ask why they were being detained.  Whitsell responded "they're breaking policy and I'm giving them a ban on the building and if they come back it will be breaking the law so I'm trying

---

[16] *Students banned from Kansas Statehouse over Medicaid protest*, KSNT NEWS (Mar. 27, 2019), at :44-:57, *available at*  https://www.ksnt.com/news/local-news/students-banned-from-kansas-statehouse-over-medicaid-protest/1882006817.

to figure out everything about that."[17] When Hammet inquired again about the reason for the detention, Whitsell provided the same comically vague rationale "because they're in the state building which have policies."[18] Plaintiffs were released shortly after Hammet approached. They received no written notice of their ban.  Whitsell never informed Plaintiffs what policy they had violated. He also did not identify the policy when he provided statements to the press, explaining only "there's an expectation of how people act when they're in the building."[19]

31.     On March 28, 2019, Lieutenant Eric Hatcher of the Capitol Police called Plaintiffs and told them that they were no longer banned from the Statehouse.  Hatcher told Mr. Cole that while he "did something wrong" by unfurling the banners, that a year ban was "a little harsh." At no point did Lt. Hatcher identify the specific policy that Plaintiffs had violated. Moreover, Lt. Hatcher did not say that Whitsell had overstepped his authority or imposed an improper penalty. Lt. Hatcher concluded the call by telling Mr. Cole that he was required to obtain a permit to demonstrate with Ms. Sullivan and Mr. Faflick in the future.

32.     On information and belief, Defendant Day acknowledged that the ban Plaintiffs received was excessive and disproportionate for their misconduct.[20] Indeed, Defendant Day told Mr. Cole that he did not have to leave the building.[21]

33.     Following the call with Lt. Hatcher, Plaintiffs reviewed the regulations and rules regarding demonstrations at the Statehouse so that they could avoid being detained and banned in the future.  Plaintiffs discovered that they were prohibited from holding any "meeting,

---

[17] *Id.* at :53-:59.
[18] *See supra* note 14, at 1:48-1:54.
[19] John Hanna, *Students banned from Kansas Statehouse over Medicaid protest*, NEW HAVEN REGISTER (Mar. 27, 2019), https://www.nhregister.com/news/article/Kansas-Statehouse-banners-protest-lack-of-13720374.php.
[20] Rafael Garcia, *Update: Students no longer banned from Statehouse after unfurling sign with bloody hands for Medicaid expansion.* KSTATE COLLEGIAN, (March 27, 2019), https://www.kstatecollegian.com/2019/03/27/students-banned-from-statehouse-after-unfurling-bloody-hand-sign-for-medicaid-expansion/.
[21] *See* Supra note 16.

demonstration or solicitation" at the Capitol or on its grounds absent prior permission of the Secretary of Administration and a legislative sponsor. They also learned that they could not "bring personal signage to any building in the Capitol Complex" and that they could only have "banners and signage" as part of a preapproved event. Finally, Plaintiffs discovered that they could be banned from the Capitol for any perceived rule violation and that the Capitol Police had no standards to guide their expulsion decisions.

34.     The restrictive scheme of these regulations coupled with the chilling effect created by the Capitol Police's retaliatory treatment have made Plaintiffs reticent to exercise their First Amendment rights to petition the government during the remainder of the legislative session and at future events taking place at the Statehouse during the Summer and Autumn of 2019. Plaintiffs would like to demonstrate on issues that will come up during the veto session beginning on May 1, 2019 like the tax bill as well as issues that will be debated by interim committees and taskforces this summer. However, they fear that they will continue to be targeted with harassment in retaliation because of their expressive activities.

## CAUSES OF ACTION

### Count I-Violation of First Amendment Rights (42 U.S.C. §1983)
### Facially Invalid Permit Policies
### (Claims of All Plaintiffs against Defendants Goossen and Day)

35.     Plaintiffs reallege the material facts alleged in the preceding paragraphs against Defendants Day and Goossen.

36.     Defendants have deprived and continue to deprive Plaintiffs of their rights to freedom of expression by unduly restraining their expressive conduct, peaceable assembly, and ability to petition for redress of grievances under the First Amendment.

37.     Defendants maintain and enforce a permitting scheme that requires Plaintiffs to obtain a permit for *any* meeting or demonstration at the Statehouse or on its grounds,  regardless of size, and this permitting scheme is a facially invalid prior restraint on the exercise of First Amendment rights. Moreover, Defendants' permitting policy requiring that applications be submitted 10 business days prior to the proposed event is a facially overbroad restriction on speech since it fails to contain an exception for spontaneous speech and expressive activities.

38.     Defendants' policy of requiring a legislative sponsor before granting a permit prevents public expression of any message that state legislators do not support and creates a content-based restriction suppressing speech that is not supported by elected officials.

39.     Additionally, Defendants' policy vesting the Secretary of Administration with ultimate authority to determine whether an event may be approved, whether an event relates to a governmental purpose, and whether any provisions of the permitting scheme may be waived provides him with unbridled discretion and constitutes a facially invalid prior restraint on speech. Further, the policy provides the Secretary of Administration with an unconstitutional degree of discretion by failing to impose a time limit on the application approval process.

40.     Finally, Defendants' $20 processing fee requirement is not narrowly tailored to any significant government purpose, particularly as it relates to individual protesters and small groups, and constitutes an impermissible restraint on speech.

41.     The application and threatened application of Defendants' permitting policies to Plaintiffs and other individuals exercising such rights are not narrowly tailored to serve any significant governmental interest and fail to leave open ample alternative channels of communicating Plaintiffs' messages.

**Count II-Violation of First Amendment Rights (42 U.S.C. §1983)**
**Facially Invalid Sign Policies**
**(Claims of All Plaintiffs against Defendants Goossen and Day)**

42.     Plaintiffs repeat and re-allege paragraphs 1- 41.

43.     Defendants Goossen and Day have violated Plaintiffs' First Amendment rights by
prohibiting them from silently displaying a hand-held sign inside the Statehouse in areas that are
already open to all other members of the public.

44.     Defendants' blanket restriction on the silent display of signs is not narrowly tailored to
serve a significant governmental interest. Whatever justifications Defendants have for restricting
non-disruptive speech inside the Statehouse, and Plaintiffs do not concede there are any, are
served by existing rules that directly regulate the conduct Defendants seek to prohibit, including
policies prohibiting disruption of state business and damage to the building.

45.     The application and threatened application of Defendants' sign policies to Plaintiffs and
other individuals exercising their First Amendment rights, are not narrowly tailored to serve any
significant governmental interest and fail to leave open ample alternative channels of
communicating Plaintiffs' messages.

**COUNT III-**
**Violation of First and Fourteenth Amendment Rights (42 U.S.C. § 1983)**
**Facially Invalid Blanket Authority to Ban Individuals from Statehouse**
**(Claims of All Plaintiffs against All Defendants)**

46.     Plaintiffs repeat and re-allege paragraphs 1- 45.

47.     Defendants maintain an official policy and practice that empowers Capitol Police to
ban individuals from the Statehouse if they suspect the individual's First Amendment activity
will result in a violation of building rules.

48.     This policy grants Capitol Police officers unfettered discretion and is an unconstitutional
prior restraint on any future expressive activity that would occur at the Statehouse.  The policy

lacks narrow, definitive, and objective standards for applying bans and allows full premises bans for even minor infractions, thus restricting far more speech than necessary.

49.     Additionally, the policy lacks standards for determining whether to impose a ban and what the duration of the ban will be, depriving Plaintiffs and other individuals seeking to exercise their First Amendment rights in the Statehouse of meaningful notice and due process.

50.     Finally, Defendants have deprived and risk continuing to deprive Plaintiffs of their procedural due process rights to have a post-deprivation hearing to review the validity of a Statehouse ban.

51.     The unconstitutional overbreadth and vagueness of Defendants' policy, coupled with its chilling effect on First Amendment rights and lack of due process protections, renders the policy facially unconstitutional and invalid in all applications.

### COUNT IV-Violation of First Amendment Rights (42 U.S.C. §1983)
### Official Retaliation in Violation of the First Amendment
### (Claims of All Plaintiffs against All Defendants)

52.     Plaintiffs reallege the material facts alleged in the preceding paragraphs against Defendants. Defendants' actions to ban Plaintiffs from the Statehouse for a year constitute unlawful official retaliation for their exercise of First Amendment rights to free expression, peaceable assembly, and petitioning for the redress of grievances. Those retaliatory actions include but are not limited to: (1) detaining Plaintiffs for an unreasonable amount of time because they engaged in protest activity; (2) imposing a disproportionate ban on Plaintiffs vis-à-vis their alleged misconduct because of their protest activity; and (3) harassing Plaintiffs through coercive and intimidating investigation tactics because they engaged in speech activity.

**<u>PRAYER FOR RELIEF</u>**

1. Wherefore, Plaintiffs respectfully requests that this Court:

   a.  Enter judgement in favor of Plaintiffs and against Defendants, adjudging Defendants' policies and actions to be unconstitutional, and holding Defendants liable to Plaintiffs;

   b.  Enter a declaratory judgement in favor of Plaintiffs, adjudging that, by maintaining overbroad policies suppressing First Amendment activity, Defendant violated Plaintiffs' constitutional rights of speech, expression, and assembly;

   c.  Enter a declaratory judgment in favor of Plaintiffs adjudging that Defendants' practices and policies related to premises bans violate the First and Fourteenth Amendments;

   d.  Issue a preliminary and permanent injunction enjoining implementation of Defendants' policies requiring: (i) individuals to obtain permits for any meeting or demonstration regardless of size; (ii) submission of application for a permit ten business days prior to the event, regardless of spontaneous events; (iii) a legislative sponsor; and (iv) a $20 application fee, regardless of event size. Additionally, issue a permanent injunction enjoining Defendants' policies granting the Secretary of Administration unfettered discretion in the permitting process;

   e.  Issue a preliminary and permanent injunction enjoining implementation of Defendants' policies banning all signs and policies empowering Capitol Police to ban individuals from the premises;

f.   Issue a preliminary and permanent injunction enjoining Defendants from retaliating against Plaintiffs in the future for past, present, or future exercise of their First Amendment rights;

g.   Award Plaintiffs the costs and reasonable attorneys' fees incurred in this action;

h.   Grant such other relief as the Court may deem just and proper.

## **Designation Place of Trial**

Pursuant to D. Kan. 40.2, Plaintiff designates Topeka, Kansas as the place of trial.

Respectfully submitted,

/s/ Lauren Bonds
Lauren Bonds, KS No. 27807
Zal Kotval Shroff, KS No. 28013
ACLU Foundation of Kansas
6701 W. 64th Street, Ste. 210
Overland Park, KS 66202
Phone: (913) 490-4100
Fax: (913) 490-4119
lbonds@aclukansas.org
zshroff@aclukansas.org

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 6th day of April, 2019, which will send a notice of electronic filing to all attorneys of record.

/s/ Lauren Bonds
Lauren Bonds