IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Jonathan Cole, Katie Sullivan, and Nathaniel Faflick, <br><br> Plaintiffs, <br><br> v. <br><br> Duane Goossen in his official capacity as Secretary of Administration, Tom Day in his official capacity as Legislative Administrative Services Director, and Herman Jones, Superintendent of Kansas Highway Patrol, <br><br> Defendants. | ) ) ) ) ) ) ) ) Case No. 19-cv-04028-HLT ) ) ) ) ) ) ) ) ) ) ) ) |

## STIPULATIONS

The parties hereby stipulate as follows:

1. The following stipulations are a non-exclusive description of the evidence presented at the hearing in plaintiffs' motion for preliminary hearing. They are not always comprehensive on the subjects that they address. They are not intended to limit the Court's analysis and consideration of evidence which the parties could not agree was uncontested. Likewise, they are not intended to foreclose additional fact findings on the subject matters addressed in the stipulations.

2. The Kansas Capitol Statehouse is located in Topeka, KS. The Statehouse is situated on 20 acres referred to as the Capitol Square. A map of the square is Def. Ex. 101.

3. The Statehouse is listed in the National Register of Historical Places. The Kansas Historical Society says:

> "[T]he Kansas State Capitol is the state's most important architectural treasure. The site was donated through the efforts of Cyrus K. Holliday, president of the early Topeka Town Company and one of the founders of the Atchison, Topeka & Santa Fe Railway."

> "Construction began after the east wing cornerstone was laid October 17, 1866. The brown stone selected for construction did not harden sufficiently. Following a harsh winter in 1867, the cornerstone and foundation of the wing crumbled.

1

Harder limestone from Geary County was used to replace the foundation and continue construction on the wing. The west wing Limestone from Cottonwood Falls was selected for use elsewhere in the construction. Construction on the north and south wings began in 1883."

"Construction on the Capitol took 37 years; the building was officially completed March 24, 1903. The total cost was $3,200,588.92."

"The Kansas State Capitol, like other U.S. statehouses built in the 19th century, was inspired by classical architecture in Greece, Rome, and Europe. The design of the U. S. Capitol was no exception and influenced the plans proposed by Edward Townsend Mix in 1866. The designs Mix proposed were originally selected by the building committee, which wanted to incorporate modifications in the plans."

4. The Statehouse underwent a multiyear and multimillion dollar restoration project which began in 1999. The project was aimed to return the Capitol Statehouse to its original grandeur and preserve it for the next century. On January 29, 2014, the state dedicated the newly restored Statehouse.

5. Generally, the Kansas Department of Administration ("KDOA") has charge, care, management and control of the Statehouse and the Capitol Square. See K.S.A. 75-3762. However, the legislative coordinating council ("LCC") retains control of the space and facilities within the Statehouse assigned to the legislature, including its staff, department and agencies. K.S.A. 75-3763. See also K.S.A. 2018 Supp. 75-3765a (LCC assigns space and facilities within the Statehouse per this statute).

6. A map of the Statehouse is Def. Ex. 104.

7. The public has access to parts of the Statehouse.

   a. Statehouse building visiting hours are: 8 a.m. – 5:30 p.m. Monday – Friday; 10 a.m. – 4 p.m. Saturday; Closed on state holidays.
   b. Public entry and exit to the Statehouse is through its north-side ground-floor doors into its visitor center.
   c. Daily guided tours of the Statehouse are conducted by the Kansas Historical Society.
   d. All visitors must pass through a security checkpoint with metal detecting equipment.
   e. Security cameras are located within and around the Statehouse.
   f. The Statehouse is patrolled by the Capitol Police, which is part of the Kansas Highway Patrol.
   g. General public access is not permitted into the multiple meeting rooms, offices, and mechanical and loading areas within the Statehouse.

8. There are approximately 100,000 visitors to the Statehouse each year.

9. Hundreds of events are conducted inside the Statehouse each year. The events need not involve the exercise of speech or expressive activities.

10. The KDOA's Office of Facilities and Property Management ("OFPM"), controls use of the areas for events inside the Statehouse on the ground floor, 1st Floor, 2nd Floor and Statehouse grounds [excepting the classroom and auditorium managed by the Kansas Historical Society]. Its "Policy for Usage of the Statehouse and Capitol Complex" is Def. Ex. 107. A copy of the application for such an event is Def. Ex. 108. A copy of the "event reminders," Def. Ex. 109, is provided before the event.

11. The electronic KDOA application contains a blank for reservation of an area within or by the Statehouse for the event. The drop down menu lists areas on the first and second floors and the out-side south steps and apron. There are blanks for the numbers of people involved, time for "setup" and the event's start and ending times. There are blanks for a required equipment list. The application provides applicants must also provide an itinerary identifying the speakers who will participate in the event and a detailed description of the event, including the event's legislative sponsor. The application also states an event diagram must be provided.

12. The LCC, through the Director of Legislative Administrative Services ("LAS"), controls use of the areas within the Statehouse which are managed by the Legislature. These areas include the Legislative Chambers, 3rd, 4th and 5th Floors of the Statehouse and Legislative Committee Rooms. Some of the unwritten rules for events in the spaces controlled by the LCC (including publicly accessible areas on the 3rd, 4th, and 5th floors) are: Events are not permitted which affect ingress and egress to the House or Senate Chambers; a permit application is required for an event; no event application fee is charged; and a legislative sponsor is required and the event must relate to a government purpose. The LAS uses the "Policy for Usage of the Statehouse and Capitol Complex" as guidance.

13. Capitol police law enforcement officers and area guards serve at the state's Capitol Complex area, which includes the Statehouse, its grounds and other state owned and leased properties in Topeka. Capitol police law enforcement officers have all the powers and authority of law enforcement peace, police and law enforcement officers. Capitol police are tasked to provide security at the Capitol Complex, including security for the Governor and legislators.

14. The capitol police's practice has been to tell certain individuals they are "banned" or the like in order to express that they have received a trespass warning. To effectuate the warning, a computer record is prepared which identifies the warned individual and the event which lead to the warning. The record is maintained by the capitol police and is accessible to officers stationed at the Statehouse. In approximately 2010 or 2011, the operations lieutenant for the capitol police communicated his "personal belief" to his subordinates that they only issue trespass warnings in the event (1) the person was arrested for criminal conduct [or committed a crime] at the Statehouse or its grounds and (2) the person reasonably appears to pose a risk to others or property if allowed in the Statehouse.

15. The capitol police officer issuing a trespass warning has been tasked to establish the duration of the warning. The officer was and is required to create a report when he or she makes an arrest. The supervising lieutenant reviewed and reviews these reports, generally within 24 hours or the next business day.

16. Since May 1, 2017 and until March 27, 2019, two individuals received a trespass warning record pertaining to the Statehouse. Mr. B_____ was "banned" from all state complexes. He had been arrested for stabbing an individual. He had also been arrested for criminal trespass and theft at a state office building. And Mr. D_____ had been masturbating outside the Statehouse's 5th Floor women's restroom. He was told to leave the building and not to enter ever again.

17. Capitol police had interpreted the KDOA's policies to prohibit personal signage in the Statehouse. If such personal signage had been observed in the security checkpoint, the person attempting to bring the signage into the Statehouse would have been instructed that it is not permitted within the Statehouse and that it must be removed. However, by about March 19, 2019, Capitol police had been instructed that personal signage was acceptable in the Statehouse if part of an event. Then, as of April 22, 2019, this was further clarified so that Capitol Police are no longer prohibiting hand-held personal signage in the Statehouse. This change in practice has not been published publicly in writing.

18. On March 27, 2019, the plaintiffs, with the assistance of others, hung one or more 10 feet wide by 24 feet long banners from the Statehouse's 5th floor balconies' railings (which they had wrapped around the railings' balusters) into the open rotunda.

19. Plaintiffs' hanging of large banners from the 5th Floor railings violated the "Policy for Usage of the Statehouse and Capitol Complex's" directive that: "No banners, signs, exhibits or any other materials will be taped, tacked, nailed, hung or otherwise attached to State property."

20. The capitol police were notified that a banner or banners had been hung from the Statehouse's 5th floor railing(s). The plaintiffs were located and confirmed they hung the banners. They were required to leave the Statehouse.

21. Officer Scott Whitsell told the plaintiffs that they were "banned" from the Statehouse for one year before they left.

22. On March 28, 2019, Whitsell's superior, Lt. Eric Hatcher, notified the plaintiffs that they were no longer banned from the Statehouse.

23. LCC/LAS and KDOA/OFPM established practice is that all applications for events, at the locations used for events within the Statehouse, that have a legislative or government agency sponsor are approved—regardless of any technical or timing deficiency in the application— unless there is a preexisting application/approval for another event at the requested date, time and location. No written policy or publicly available guidance provides this information.

24. No policy or practice prohibits small groups of persons from entering the Statehouse, during visiting hours, and congregating in the public areas of the Statehouse just on the basis that they are in the Statehouse together.

Date: July 8, 2019

Approved and Stipulated,

| | |
|---|---|
| /s/ Lauren Bonds <br> Lauren Bonds, KS No. 27807 <br> Zal Kotval Shroff, KS No. 28013 <br> ACLU Foundation of Kansas <br> 6701 W. 64th Street, Ste. 210 <br> Overland Park, KS 66202 <br> Phone: (913) 490-4100 <br> Fax: (913) 490-4119 <br> lbonds@aclukansas.org <br> zshroff@aclukansas.org <br> *Attorneys for Plaintiffs* | OFFICE OF ATTORNEY GENERAL <br> DEREK SCHMIDT <br> s/ Arthur S. Chalmers <br> Arthur S. Chalmers, KS S. Ct. #11088 <br> Assistant Attorney General <br> 120 SW 10th Ave., 2nd Floor <br> Topeka, Kansas 66612 <br> Ph: (785) 368-8426 <br> Fax: (785) 291-3707 <br> Email: art.chalmers@ag.ks.gov <br> *Attorney for Defendants* |